# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| RODERICK JACKSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. CV411-031 |
| | ) |
| ROBERT TOOLE and THE | ) |
| ATTORNEY GENERAL OF THE | ) |
| STATE OF GEORGIA, | ) |
| | ) |
| Respondents. | ) |

## REPORT AND RECOMMENDATION

Roderick Jackson, currently incarcerated at Wilcox State Prison in Abbeville, Georgia, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) He contends that his 1996 Chatham County conviction for robbery, kidnaping, and theft by taking violated his constitutional rights. (*Id.* at 6.) While respondent does not raise timeliness as a defense, Jackson's petition is clearly untimely.[1] Additionally, the state habeas court's determination of the issue is due deference.

---

[1] Federal district courts are empowered to raise 28 U.S.C. § 2244(d)(1)'s statute of limitation *sua sponte* and dismiss those actions that are time-barred. *Jackson v. Sec'y for Dep't of Corrs.*, 292 F.3d 1347, 1349 (11th Cir. 2002).

## A. Untimely Petition

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended 28 U.S.C. § 2244 to include a one-year statute of limitations for habeas corpus petitions filed by state prisoners. 28 U.S.C. § 2244(d)(1). The limitations period runs from "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *Jimenez v. Quarterman*, 555 U.S. 113, 129 S. Ct. 681, 685 (2009). A state criminal judgment becomes final "'on the date on which the [United States] Supreme Court issues a decision on the merits or denies certiorari, or . . . on the date on which defendant's time for filing such a petition expires.'" *Bond v. Moore*, 309 F.3d 770, 773 (11th Cir. 2002) (*quoting Kaufmann v. United States*, 282 F.3d 1336, 1339 (11th Cir. 2002)); *Jimenez*, 129 S. Ct. at 685.

The one-year limitations period is tolled, however, when a state prisoner properly files an application for state collateral review. 28 U.S.C. § 2244(d)(2); *see Ford v. Moore*, 296 F.3d 1035, 1036-37 (11th Cir. 2002) (statute of limitations tolled while state prisoner sought state

2

habeas corpus relief). Although the filing of a state habeas action tolls the one-year limitations period, it does not reset the limitations period. *See Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) (a state habeas petition filed after the AEDPA limitations period has expired cannot toll the statute of limitations because there is no time left to toll). That is, the days between the date upon which the conviction became final and the beginning of state habeas review are counted toward the limitations period.

Here, Jackson was convicted in December 1996. (Doc. 1 at 3.) The Georgia Court of Appeals affirmed his conviction on March 23, 1998. (*Id.*) Three-and-a-half years later (on September 4, 2001), he filed a habeas petition in state court attacking his conviction. (Doc. 8-1 at 1.) That petition was denied on May 30, 2006. (Doc. 8-2 at 1.) He did not exhaust that claim by moving for a certificate of probable cause to appeal. (Doc. 8-3 at 2, 4.) He filed a second state habeas petition on December 29, 2009 based upon a recent change in the law. (*Id.* at 5 (citing *Garza v. State*, 284 Ga. 696 (2008).) The petition was denied on April 19, 2010. (Doc. 8-4 at 1.) The Georgia Supreme Court denied his

application for a certificate of probable cause to appeal the habeas ruling on January 24, 2011. (Doc. 8-6 at 1.) On February 14, 2011, he filed the instant federal habeas petition.

It is unclear from Jackson's filings precisely when his conviction became final, but it is ultimately unimportant. What *is* clear is that Jackson allowed more than three years to elapse between the denial of his first state habeas petition and the filing of his second.[2] As the Court explained above, the second habeas petition did not reset the AEDPA clock. Far more than a year of countable time passed between the time Jackson's conviction became final and the filing of his federal petition, so he is untimely. Moreover, Jackson cannot rely upon the intervening change in state law to restart the limitations period under 28 U.S.C. § 2244(d)(1)(D) (running the limitations period from "the date on which the factual predicate of the claim . . . could have been discovered"). As a general rule, an intervening change in state law does not qualify as a "fact" which would restart the limitations period under § 2244(d)(1)(D).

---

[2] It is also clear that he waited more than three-and-a-half years to file his first state habeas petition. While the Court is not certain how long his case remained on direct review, it is safe to assume a significant number of countable days elapsed during that period.

4

*Shannon v. Newland*, 410 F.3d 1083, 1088-89 (9th Cir. 2005) (intervening change in state law clarifying the elements of a crime does not qualify as a "fact" resetting limitations period under § 2244(d)(1)(D)); *but see Johnson v. United States*, 544 U.S. 295, 305-310 (2005) (an intervening legal decision *may* be a fact under 28 U.S.C. § 2255's limitations clock if the legal decision arose in the petitioner's own case -- e.g., the petitioner reversed a state conviction which had resulted in his conviction as an armed career criminal). The question, then, is whether the late filing is subject to equitable tolling, based upon the intervening change in the law.

A petitioner is not time barred from filing if he is entitled to equitable tolling of the one-year limitation period. He must, however, show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, ___ U.S. ___, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Sandvik v. United States*, 177 F.3d 1269, 1271-72 (11th Cir.1999). The Eleventh Circuit has held that "[t]he burden of establishing entitlement to this

extraordinary remedy plainly rests with the petitioner," emphasizing that "[e]quitable tolling is an extraordinary remedy and is applied sparingly." *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1286 (11th Cir. 2002).

Jackson fails to satisfy the second prong. As a general rule, a change in the law, standing alone, does not constitute an extraordinary circumstance. In an analogous setting -- a petitioner seeking untimely Fed. R. Civ. P. 60(b)(6) relief from a final judgment -- the Supreme Court addressed the effect of a change in law, reasoning that "[i]t is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation [than the District Court below reached]." *Gonzalez v. Crosby*, 545 U.S. 524, 537-38 (2005). More importantly, the change in the law here did not prevent Jackson from filing a federal habeas petition in a timely manner. The *Garza* case simply modified the test for kidnapping's asportation element -- the requirement that the victim be moved against his will. 284 Ga. at 697. While it fundamentally changed the test for asportation, Jackson cannot show that pre-*Garza* law was an impediment to timely filing a federal habeas petition. He certainly could have exhausted his remedies

and filed a federal habeas action addressing his pre-*Garza* claims before the limitations period expired. While the subsequent change in the law provided a stronger footing for a habeas challenge, Jackson was perfectly capable of filing a federal habeas petition in a timely manner.[3]

## B. Deference

Even if the *Garza* case *did* entitle Jackson to equitable tolling, his claim still fails. The state court addressed his claim on the merits, and its determination is due deference here.

In addition to setting new timeliness standards, AEDPA placed "a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bell v. Cone*, 535 U.S. 685, 693 (2002) (AEDPA was intended "to prevent federal habeas 'retrials' and to ensure that

---

[3] Furthermore, Petitioner's *pro se* status affords him little advantage, as the Eleventh Circuit has held that lack of familiarity with the judicial process will not justify equitable tolling. *See, e.g., Rich v. Dep't of Corrs.*, 317 F. App'x 881, 884 (11th Cir. 2008) (noting that *pro se* status is not an extraordinary circumstance); *Helton v. Sec'y Dep't of Corrs.*, 259 F.3d 1310 (11th Cir. 2001) (refusing to recognize an extraordinary circumstance when an incarcerated petitioner mistakenly believed the AEDPA period of limitations had not started to run).

state-court convictions are given effect to the extent possible under law."); see *Peterka v. McNeil*, 532 F.3d 1199, 1200-01 (11th Cir. 2008) (under AEDPA a federal court's review of a state court ruling is "greatly circumscribed and highly deferential to the state courts") (citation omitted); *Trotter v. Sec'y, Dep't of Corr.*, 535 F.3d 1286, 1290 (11th Cir. 2008) (AEDPA limits a federal court's review of a state court's decisions "and establishes a general framework of substantial deference for reviewing every issue that the state courts have decided.") (citations omitted). These restrictions on federal habeas review are set forth in 28 U.S.C. § 2254(d), which provides that a federal court may grant a writ of habeas corpus for a claim adjudicated on the merits in state court only if the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

Where the Supreme Court has decided the issue addressed by the

state court,[4] the federal habeas court must determine whether the state court's decision is "contrary to" or involves an "unreasonable application" of the controlling precedent. These § 2254(d)(1) clauses have independent meaning and furnish separate bases for reviewing a state court's decisions. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 404-05; *Putnam*, 268 F.3d at 1241 (11th Cir. 2001). A state court

---

[4] The "threshold question" under § 2254(d)(1) is whether the habeas petitioner is seeking to apply a rule of law that was clearly established at the time his state court conviction became final. *Williams*, 529 U.S. at 390. Since the statute expressly provides that only pronouncements "by the Supreme Court of the United States" qualify as "clearly established Federal law," 28 U.S.C. § 2254(d)(1), a federal habeas court may not look to the "the case law of the lower federal courts" in determining what federal law is "clearly established." *Putnam v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). Further, the statute "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. These "holdings -- the exclusive touchstone for clearly established federal law -- must be construed narrowly and consist only of something akin to on-point holdings." *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).

So unless a prior Supreme Court decision "squarely addresses" the issue presented in the habeas case, *Wright v. Van Patten*, 552 U.S. 120, 125 (2008), or establishes a legal principle that "clearly extend[s]" to the conduct at issue in that case, then it cannot be said that the law is clearly established under AEDPA. *Id.* at 123; *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009). Thus, "federal courts may no longer extract clearly established law from the general legal principles developed in factually distinct contexts." *House*, 527 F.3d at 1017. If the federal habeas court makes a threshold determination that the law was not clearly established at the time the state court issued its decision, then that finding is dispositive in the § 2254(d)(1) analysis, and there is no need for the Court to assess whether the state court's decision conflicts with controlling United States Supreme Court authority. *Id.*

decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13. In contrast, a state court decision involves an "unreasonable application" of clearly established federal law where it correctly identifies the governing legal rule from the Supreme Court's cases but applies it unreasonably to the facts of the particular prisoner's case. *Id.* at 407-08, 413. Thus, "[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Instead, the state court's application of Supreme Court precedent must be "objectively unreasonable." *Id.* at 409; *Bell*, 535 U.S. at 694; *Borden v. Allen*, ___ F.3d ___ 2011 WL 2685730 at * 25 (11th Cir. Jul. 12, 2011). That presents "a substantially higher threshold" than the pre-AEDPA standard. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see McDaniel*

v. *Brown*, \_\_\_ U.S. \_\_\_, 130 S. Ct. 665 at *671-674 (2010).[5]

Jackson raised *Garza*'s change in the law in his second state habeas petition, arguing, as he does now, that his conviction for kidnapping was obtained in violation of the Constitution's Fifth, Sixth, and Fourteenth Amendments because the evidence against him was insufficient to support the conviction under *Jackson v. Virginia*, 443 U.S. 307 (1979). (Doc. 8-3 at 5.) Under *Jackson*, the proper standard for reviewing a sufficiency of the evidence claim is to ask whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S. at 324. Asportation, of course, is an essential element of the crime of kidnapping. O.C.G.A. § 16-5-40.

Prior to *Garza*, the Georgia courts held that asportation may be established by "movement of the victim, however slight." 284 Ga. at 697

---

[5] Federal courts also must presume state court factual findings to be correct unless they are rebutted by the petitioner "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This statutory presumption of correctness applies to findings of fact made by both state trial and appellate courts. *Mason v. Allen*, 605 F.3d 1114, 1118-19 (11th Cir. 2010); *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007). Such deference does not apply, however, to mixed determinations of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001).

(quotations and citation omitted). The "movement" requires more than a mere positional change. *Id.* at 698. It must be movement "designed to better carry out the criminal activity." *Id.* (citation omitted).[6] After noting that the Georgia test was out of keeping with the rest of the nation, blurred the distinction between false imprisonment and kidnapping, allowed cumulative punishment for a single course of conduct, in violation of "substantive double jeopardy," and enabled abusive prosecutions in violation of the Due Process clause, the *Garza* court embraced the "modern approach with respect to asportation." *Id.* at 700-702.

Georgia courts are thus now required to assess four factors: "(1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense." *Id.* at 702 (citation

---

[6] Jackson does not contend that his conviction was out of keeping with that standard.

omitted).⁷ Those factors help in determining "whether the movement in question . . . substantially isolate[d] the victim from protection or rescue," or was "merely a 'criminologically insignificant circumstance' attendant to some other crime." *Id.* (citations omitted).

In addressing Jackson's claim, the state court discussed the offense facts in detail:

> Here, the petitioner's charge of kidnapping alleged that the petitioner abducted and stole away the person of Wanda Spacheck without lawful authority or warrant and held her against her will. The evidence shows that the petitioner asked the victim to come back to the kitchen, as the petitioner had made coffee and wanted to verify that he was not the one that made the mess. The victim and the petitioner went towards the kitchen. The petitioner went to the cooler in the back, opened it, went inside, and began making an issue of missing beer. The petitioner then exited the cooler, and the victim stepped out of the way so the petitioner could close the cooler door. As the victim began to take a step forward towards the front of the kitchen, the petitioner stepped in front of the victim, blocked her path, and demanded her money and car keys. The petitioner slammed the victim against the wall and again demanded her car keys. The victim told the petitioner she would retrieve the keys when they got to the front, but the petitioner replied that he wasn't kidding and pulled a butcher knife to the victim's face. The victim and the petitioner struggled, and the petitioner pushed the victim into the cooler. The petitioner fell

---

⁷ *Garza* has since been superseded by statute. However, *Garza* applies retroactively, *Hammond v. State*, 289 Ga. 142, *1 (2011), even though the statute itself is not retroactive. *Curtis v. State*, ___ Ga. App. ___, 2011 WL 2698182 at * 3 n. 9 (Jul. 13, 2011).

onto the floor, with one leg still outside the cooler door. The victim started screaming and pushing, and the petitioner kept trying to push the victim inside the cooler. She did not go into the cooler willingly. The petitioner's leg was being slammed by the cooler door. The petitioner finally jerked her leg into the cooler out of fear of being cut by the knife and bleeding to death.

Once inside the cooler, the victim went crazy, screaming and running back and forth and charging the door and kicking [the] door as there was nothing on the door like a knob. She threw things at the fan motor, hoping to sound an alarm. Ultimately [she] was able to activate the emergency release in her frenzy. A butcher knife was later found by the police inside the cooler doorway.

(*Id.* at 3-4 (quotations and citations omitted).) Applying *Garza*, the state habeas court reasoned that

> Petitioner's act of forcing the victim into the locked cooler was not an incidental movement or an inherent part of another act, but rather a particular attempt to isolate the victim from protection or rescue. Furthermore, this Court finds the petitioner's act of pushing the victim into a cooler to be an act which presented significant additional danger to the victim, independent of the danger arising from the Robbery by Force. Therefore, under the test articulated in *Garza*, this Court finds that the aforementioned evidence at trial sufficiently shows asportation for the purposes of establishing said element in a charge of kidnapping. As a result, this court finds that the petitioner's conviction for kidnapping remains valid even under the change in law in *Garza*.

(*Id.* at 4.)

While the state habeas court never directly cited *Jackson v. Virginia*, it is implicit in its analysis.[8] That is, after viewing the evidence in the light most favorable to the prosecution, the state habeas court reasonably concluded that a rational trier of fact could have found the essential element of asportation beyond a reasonable doubt. *See Verdree v. State*, 299 Ga. App. 673, 681-84 (2009) (where defendant forced victims into restaurants' walk-in coolers at gunpoint and locked them inside, the actions were not necessary or inherent components of the armed robbery, they created additional danger to the victims by subjecting them to cold temperatures and isolating them, they reduced the victims' chance of rescue, and they enhanced defendant's control over them; in sum, the actions were enough to satisfy the asportation element of kidnapping under *Garza*). The Court is satisfied that the state habeas court's decision was neither contrary to nor involved an unreasonable application of *Jackson v. Virginia*. Accordingly, this Court

---

[8] Petitioner's second state habeas petition directly raised the claim under *Jackson v. Virginia* (doc. 8-3 at 5), and *Garza* itself referenced the case. 284 Ga. at 704 n.7.

should defer to the state court's judgment and deny Jackson's § 2254 claim.

## C. Conclusion

Jackson's petition is untimely, and the state habeas court's merits determination is due deference. Accordingly, Jackson's § 2254 petition should be **DISMISSED**. Applying the Certificate of Appealability ("COA") standards, which are set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this ___27th___ day of July, 2011.

_/s/ G. R. Smith_
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA